IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01037-CMA-NRN

ERIC PICKERSGILL,

Plaintiff,

v.

THE EGOTIST, LLC dba THE DENVER EGOTIST,

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (Dkt. #21)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

**Introduction**

This is a copyright lawsuit brought by a photographer, Mr. Eric Pickersgill, against Defendant The Egotist, LLC d/b/a The Denver Egotist ("Defendant" or the "Egotist"). Mr. Pickersgill alleges that the Egotist's website (the "Website"), without permission or license, reprinted six of his copyrighted photographs in a web post. The Egotist, for its part, contends that the post, which included six large images from a larger collection of Mr. Pickersgill's photographic work, with a very small amount of accompanying text, was in fact an article describing the work itself, and therefore constitutes fair use of the images. The larger collection of Mr. Pickersgill's photographic work from which the images were copied is entitled "*Removed*." The images show people, in various poses, as if engrossed in their electronic devices, but there is no

electronic device in any of the subjects' hands. Thus, the electronic devices or cellphones have been "removed."

This matter comes before the Court on Defendant's Motion to Dismiss. Dkt. #19. The Motion was referred by Judge Arguello on June 29, 2022. Dkt. #21. The case now has been reassigned to Judge Sweeney. Mr. Pickersgill filed an opposition. Dkt. #23. Defendant filed a reply. Dkt. #27. The Court heard argument on Defendant's Motion to Dismiss on August 17, 2022. Dkt. #37.

At the hearing on the Motion to Dismiss, Mr. Pickersgill's counsel suggested that certain aspects of the representations by Defendant in its motion to dismiss were false. Specifically, Pickersgill's counsel suggested that while Defendant claimed to have written the brief text accompanying the copyrighted images, in reality, the words had been copied verbatim from Mr. Pickersgill's own website describing his collection of images. Thus, the notion that the text somehow constituted an original article, entitled to the benefit of the fair use defense, was without merit. Based on Plaintiff's counsel's representation, I ordered defense counsel to inquire with his client as to the source of the text in the Website's posting about Mr. Pickersgill's images.

On August 18, 2022, Defendant filed a statement in response to my order. *See* Dkt. #37. In that statement, Defendant explained that the source of the text in the disputed posting was a written description from YouTube of the TEDx talk by Mr. Pickersgill himself about the *Removed* photographs. The person who created the posting for the Egotist did not know who had authored the text. The Egotist merely copied it from the YouTube page. Defendant disputes that the text was copied from Mr. Pickersgill's website, providing evidence from Internet Archives that the written text was

2

not on Mr. Pickersgill's website at the time of the Egotist post. *See* Dkt. #38 and associated exhibits.

**Allegations of the Complaint**

Mr. Pickersgill is a full-time artist working in North Carolina. He received a Master of Fine Arts degree at The University of North Carolina at Chapel Hill in 2015. He received a Bachelor of Fine Arts degree with a concentration in Fine Art Photography from Columbia College Chicago in 2011. In his art, Mr. Pickersgill explores the psychological and social effects that cameras and their artifacts have on individuals and societies as a whole. He has exhibited and presented his work internationally at numerous institutions, galleries, and art fairs, including the North Carolina Museum of Art, Pantheon-Sorbonne University, the Ackland Art Museum, Rick Wester Fine Art, and the Pulse Art Fair Miami.

Two copyright registrations have been asserted by Mr. Pickersgill. Copies of a Certificate of Registration were attached as exhibits to the First Amended Complaint. *See* Dkt. #18-2. Both copyright registrations consist of a group or collection of photographs, with the online record stating that the 2018 *Removed* copyright consists of "61 photographs" published in October 2018.

On September 26, 2019, the Egotist posted about Mr. Pickersgill's *Removed* series of photographs. A copy of the posting is included as Exhibit 3 to the First Amended Complaint. Dkt. #18-3. The posting includes six images from Mr. Pickersgill's *Removed* series. The reproduced images are not thumbnails, but appear to be large, nearly full-screen size images, in high resolution. *See id.* ¶ 22.

The text accompanying the posting is extremely limited. There is a bold, capitalized, headline which reads, "PHOTOGRAPHER ERIC PICKERSGILL'S SERIES 'REMOVED' SHOWS US HOW OUR DEVICES DIVIDE US." The post contains two sentences of text:

> Artist Pickergill's [sic] photography series, Removed, went viral and touched a collectively universal nerve. He makes visible what so many have tried to explain about the ways personal devices alter human behavior, helping us relearn how to be truly connected in our device-dominated age.

Dkt. #18-3. The post also included the link to the YouTube page for Mr. Pickersgill's TEDx talk about his pictures.

As the Court can tell from reviewing the Egotist article, in terms of the relative space on the post occupied by the limited text, as compared to the copied *Removed* images, the area occupied by the images far eclipses the amount of space occupied by the text. A rough estimate would be that 95 percent of the post is Mr. Pickersgill's copied images and only five percent (if that) is text. As noted above, Defendant acknowledges that the text was not even original to the Egotist, but instead was copied from the description of Mr. Pickersgill's TEDx talk.

Mr. Pickersgill alleges that the post was not "posted for the purpose of criticism, comment, or news reporting of the copyrighted Works or Pickersgill, but instead to drive traffic to the Website." Dkt. #18 ¶ 20. He also alleges that the copying and distribution of his images by the Egotist was done in connection with the Egotist's business, for purposes of advertising and promoting Egotist's business in the course and scope of advertising and selling products and services. The Egotist contains third-party commercial advertisements and Mr. Pickersgill alleges the Egotist copied and

4

distributed Pickersgill's copyrighted photographs in connection with displaying these third-party commercial advertisements. *Id.* ¶ 21.

Mr. Pickersgill brings only one claim: copyright infringement. He says he has a valid copyright in the images and that the Egotist copied, displayed, and distributed his images without authorization in violation of 17 U.S.C. § 501. He seeks actual or statutory damages, and attorney's fees and costs.

**Defendant's Motion to Dismiss**

At this stage of the litigation, the Egotist does not dispute that Mr. Pickersgill has a valid copyright in the disputed images or that the Egotist used the images without authorization in its web posting. Instead, the Egotist argues that the Court need only examine the posting to conclude that this was a legitimate news article about the photographs themselves, making it entitled to claim the legal defense of "fair use." In the Egotist's view, the fair use defense is effectively established by the very allegation in the First Amended Complaint that the alleged infringement is based on "an article written by the Denver Egotist specifically about Pickersgill and the 'Removed' series of photographs." The Egotist argues that because it is publishing a legitimate news article about the photographs, and includes commentary about the photographs, it is entitled to use some of the photographs to provide context for the commentary. Such use, in the Egotist's view, is fair use as a matter of law.

**Legal Standards**

    **Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

5

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

6

**The Copyright Act and the Fair Use Defense**

The Copyright Act (the "Act") grants a copyright owner exclusive rights in the copyrighted works. 17 U.S.C. § 106. However, the Act contains a "fair use" privilege which allows others to use the copyrighted material in a reasonable manner despite the lack of the owners' consent:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Fair use is a statutory defense to copyright liability. *Id.* The United States Supreme Court has held that fair use must be determined on a case-by-case basis. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Fair use has been designated an affirmative defense. *Id.* at 590. Therefore, the party asserting fair use bears the burden of proof. *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 918 (2d Cir. 1994).

Courts have decided Rule 12 motions on the defense of fair use when the visual works at issue are attached to the pleadings and the fair use defense is readily apparent. *See Shell v. Devries*, No. CIV. 06-cv-00318-REB, 2007 WL 324592, at *2 (D.

7

Colo. Jan. 31, 2007) (granting motion to dismiss copyright infringement claim based on fair use), *aff'd*, No. 07-1086, 2007 WL 4269047 (10th Cir. Dec. 6, 2007); *Konangataa v. Am. Broadcasting Cos., Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (explaining a grant of a motion to dismiss based on fair use and awarding attorneys' fees to defendant news organizations).

In the *Konangataa* case, the plaintiff had livestreamed a 45-minute video of his partner giving birth to a child in the delivery room. The defendants were news outlets that had used brief excerpts of the video in their news reports, including 22- to 30-second excerpts of the video and, in one case, a mere screengrab from the video. The excerpts were broadcast in connection with news reporting and social commentary about the phenomenon of someone publicly streaming a life event that is traditionally considered personal. The court had no trouble dismissing the case from the bench, concluding that the use was squarely within the statutory protection for criticism, comment, and news reporting provided by the Act. 2017 WL 2684067, at *1.

This said, while some courts have dismissed copyright lawsuits from the outset based on an indisputable fair use defense, it is generally accepted that "[f]air use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). As such, a "court cannot engage in the fair use inquiry until it has been presented with facts relevant to evaluating the fair use factors." *Graham v. Prince*, 265 F.Supp.3d 366, 377 (S.D.N.Y. 2017). "Due to the fact-sensitive nature of the inquiry, courts generally do not address the fair use defense until the summary judgment phase." *Id. See*, *e.g.*, *Hill v. Public Advocate of the United States*, 35 F. Supp.

3d 1347, 1358 (D. Colo. 2014) (denying motion to dismiss based on fair use when an image from a same sex wedding was used without authorization on a political flyer).

**Analysis**

### Purpose and Character of the Use

In assessing whether unauthorized use of a copyrighted image is a "fair" use, the first factor to be considered is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).

> The central purpose of this investigation is to see . . . whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative." Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works. Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.

*Campbell*, 510 U.S. at 579 (internal quotations and citations omitted). Use of the material for the intrinsic purpose for which it was prepared balances the weight of the first factor against fair use.

In this instance, I find little-to-nothing transformative about the "article" published by the Egotist. The substantial majority of the post consists of large, high-quality, high-resolution reproductions of six images from the *Removed* series. The brief text was copied word-for-word from an internet description of the photographer's TEDx talk. Even if the limited text had been original to the Egotist, the two short sentences barely constitute meaningful commentary, criticism, or news reporting. The two sentences are

9

effectively nothing more than a descriptive caption for the expropriated photographic images.

There is clearly a spectrum of potential commentary or criticism of artwork. On one end of that spectrum might be an extensive, several thousand-word *New Yorker* review of an artist's body of work, accompanied by a few images of the work for illustrative purposes. On the other end would be reproduction of a substantial portion of a photographer's work, with the accompanying headline, "Check out these cool pictures!" Plaintiff's counsel conceded in argument that the latter would not likely constitute fair use under § 107(1). In the Court's view, the plagiarized posting in this case is very close to the latter end of the spectrum.

It is further alleged that the Egotist is a for-profit operation selling advertisements to earn money. This is true of many traditional newspapers and respected news websites. *See Consumers Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983) (explaining that "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit"). But if, as it seems apparent, the Egotist, in connection with this posting, did not create any new information or text, but merely reproduced in high resolution Mr. Pickersgill's images for the purpose of attracting eyeballs, selling advertisements, and making money without adding anything meaningful or original, then the Egotist can hardly be said to be altering the original creation with a "new expression, meaning, or message." If the "general calculus of copyright law" is to promote "the arts and sciences by rewarding ingenuity, without stifling creativity," *Adjmi v. DLT Ent. Ltd.*, 97 F. Supp. 512, 530 (S.D.N.Y. 2015), then the copyright equation in this case weighs heavily against the Egotist.

In addition, the "crux" of the distinction between commercial and noncommercial use is whether "the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc.*, 471 U.S. at 562. Legitimate news outlets often license photos and videos to illustrate and add visual interest to their articles. *See Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 196 (S.D.N.Y. 2021). It is alleged that the Egotist reproduced a substantial portion of Mr. Pickersgill's work, without paying any licensing fee, to generate income for itself and without adding anything new or meaningful to the consideration of the images. None of this justifies a finding of fair use.

Finally, the Supreme Court itself has cautioned that "[t]he fact that an article arguably is 'news' and therefore a productive use is simply one factor in a fair use analysis." *Harper & Row Publishers, Inc.*, 471 U.S. at 561. Here, this posting was barely "news" to begin with.

### The Nature of the Copyrighted Work

The second factor to consider is the "nature of the copyrighted work." 17 U.S.C. § 107(2). "Under this factor, the more creative a work, the more protection it should be accorded from copying; correlatively, the more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense." 4 *Nimmer on Copyright* § 1305. "In general, fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207, 237 (1990). "The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers, Inc.*, 471 U.S. at 563.

Here, Mr. Pickersgill's images are extremely creative. Both in their conception and execution, the high-contrast, black and white images are noteworthy and thought-provoking. An art photographer makes creative choices about lens length, aperture, film grain or sensor sensitivity, shutter speed, etc. After the image is captured, decisions are made during the development process (whether on film or digital, whether in a physical darkroom or using Lightroom, Photoshop, or a similar digital image editing software program). In this case, the photographer conceived of these images, captured his subjects without their devices, and took extraordinary pictures. This factor weighs heavily in favor of copyright protection.

**Amount and Substantiality of the Portion Used**

The third factor I must examine is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). "The question is whether the quantity and value of the materials used are reasonable in nature to the purpose of the copying." *N. Jersey Media Grp., Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015). "In general, 'the more of a copyrighted work that is taken, the less likely the use is to be fair.'" *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 89 (2d Cir. 2014). The basic inquiry is whether "no more was taken than necessary." *Campbell*, 510 U.S. at 589.

The Egotist argues that only six images from a much larger collection were reproduced on its website. But these were not thumbnails—these were high resolution images, each one of which took up most of the Egotist's webpage screen (excluding the ads that ran on the right side of the page). I conclude that posting six full-size, high-resolution images constitutes a qualitatively substantial portion of Mr. Pickersgill's work.

*See Roy Export Co. v. Columbia Broad. Sys., Inc.*, 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980) (even a 55-second excerpt from a one hour and twenty-nine minute Charlie Chaplin film "Modern Times" could be considered qualitatively substantial for fair use analysis purposes). In this case, each photograph is itself a copyrighted work. If this really were an "article" commenting on the Mr. Pickersgill's work, it was not necessary to copy six of Mr. Pickersgill's full-size high-resolution images to convey the point. The comparative amount of space used for text compared to the space used to reproduce the images again makes clear that the degree of copying that occurred here was excessive for the purported task of discussing or commenting on the artwork.

   **Effect on the Market**

   The fourth factor focuses on "the effect of the use upon the potential market for or value of the copyrighted work." "This last factor is undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc.*, 471 U.S. at 566. "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Id.* at 566–67.

   In the mind of a reader, seeing six full-size images may well reduce interest in either seeing a gallery display of the images or reduce the interest in purchasing a fine art copy of the image. More importantly, to negate fair use, one need only show that if the challenged use "should become widespread, it would adversely affect the potential market for the copyrighted work." *Id.* at 568 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984). If it were a widespread practice that websites across the country could with impunity republish six full size, high-resolution images of Mr. Pickersgill's images, then his entire collections could be published on-line, and there

would be less reason for people to come to his gallery showings or purchase his fine art images. This factor, at least at this early stage, weighs against a finding of fair use.

**Conclusion**

For the above stated reasons, the Court cannot conclude at this early stage of the case that Defendant has shown that its republication without authorization of Mr. Pickersgill's copyrighted images was a fair use under 17 U.S.C. § 106. Therefore, the Court recommends that the Defendant's Motion to Dismiss (Dkt. #21) be **DENIED.**

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:   September 14, 2022
    Denver, Colorado          _____
                   N. Reid. Neureiter
                   United States Magistrate Judge